## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

OZELL CARTER                                    *
4311 23rd Parkway, #910
Temple Hills, Maryland  20748                   *

    *Plaintiff*                                *

VS.                                             *       Civil Case No. 11-cv-01081

CAR CENTER LLC                                  *
2320 Crain Highway
Waldorf, Maryland 20601                         *

    SERVE ON:                                   *

    Michael Cellini                             *
    2440 Crain Highway
    Waldorf, Maryland 20601                     *

    *Defendant*                                 *

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## COMPLAINT
## AND
## PRAYER FOR JURY TRIAL

Plaintiff, Ozell Carter, by and through his attorneys, Jane Santoni and Williams & Santoni, LLP, files this Complaint against Car Center LLC ("Car Center").

## INTRODUCTION

1.      This is an action for statutory and other damages that exceed $30,000 and for declaratory and injunctive relief brought pursuant to the Truth In Lending Act, 15 U.S.C § 1601, *et seq.*, Regulation Z, 12 C.F.R. § 2226.1, *et seq.* ("TILA"), Maryland's Credit Grantor Closed End Credit Provisions ("CLEC"), the Equal Credit Opportunity Act, 15 U.S.C. § 1691, *et seq.*, 12 C.F.R. 202.1, *et seq.* ("ECOA"), Maryland's Consumer Protection Act, MD. CODE ANN.,

COMM. LAW § 13-101, *et seq.* ("CPA"), Maryland's Equal Credit Opportunity Act, MD. CODE

ANN., COMM. LAW § 12-701, *et seq.*, and Maryland's Code Regulations ("COMAR").

2.     At all times material hereto, Car Center was a Maryland Corporation licensed to

do business in Maryland located in Charles County, Maryland, was a motor vehicle dealer as

defined in Md. Code Ann., Transp. § 15-101(c), was a creditor as defined in 15 U.S.C. § 1602(f)

and 12 C.F.R. 226.2(17), a motor vehicle retail installment seller as defined in MD. CODE ANN.,

COMM. LAW § 12-110(g) and (i), was engaged in trade or commerce with things of value as and

was a motor vehicle finance company licensed to extend credit to buyers.  *Id.*

3.     The Court has jurisdiction of all causes of actions alleged herein as the claims for

relief accrued in Charles County, two of which are federal questions brought pursuant to 15

U.S.C. § 1640(e) and 15 U.S.C. § 1691e(f); Car Center and Bowen reside and/or conduct regular

business in Charles County, Maryland.

4.     Count I alleges that Car Center, as a creditor at all times, refused to comply with

TILA by providing plaintiff with a retail installments sales contract ("RISC") containing illusory

and meaningless disclosures; obtained Mr. Carter's signature on this RISC, then delivered the

purchased vehicle to Plaintiff with the secret intention to dishonor every contract term and

provision.  TILA provides that the preparer of the RISC is the initial creditor in the credit sale.

Section 1638a; Reg at Section 226.17(a), Section 226.18, *Riviere v. Banner Chev.,* 184 F.3d 457.

"Assignees" are not TILA creditors. 12 C.F.R. § 226.2(a)(17), Official Staff Commentary, 15

U.S.C. § 1641; *Ellis v. GMAC*, 160 F.3d 703 (11th Cir 1998); *see also* COMAR 11.12.01.14(A)

and (B), which requires that a RISC shall be completed as to all essential provisions and be

signed by both the buyer and the seller and that a copy executed by the seller be delivered to the

buyer at the time of buyer signing.  *See also* CLEC, MD. CODE ANN., COMM. LAW §12-1013.2.

Car Center's procedure was to provide Plaintiff with financial disclosures that were illusory and meaningless (thus incomplete) because the financial terms and other provisions were subject to Car Center's unilateral and arbitrary change after the Plaintiff signed a RISC and took vehicle delivery.  Neither TILA nor the Maryland law permit illusory or false disclosures as such disclosures are meaningless to consumers.  The very purpose of TILA and Maryland law is to provide "meaningful" credit disclosures.  15 U.S.C. § 1601(a), COMAR 11.12.01.14(A) and (B), and MD. CODE ANN., COMM. LAW §§ 12-1014(B) and 12-1013.2.  A copy of Plaintiff's RISC that was unilaterally revoked by Car Center is attached hereto as Exhibit B.

5.      Count II alleges that Car Center as creditor defined in 15 U.S.C. § 1602, 12 C.F.R. § 226.2(17) and 15 U.S.C. § 1691a(c) revoked credit to Plaintiff (when Defendant revoked the RISC) but issued no adverse action notice pursuant to 15 U.S.C § 1691(d) and Regulation B, 12 C.F.R. § 202.9.  Car Center's failure to issue an adverse action notice violates the ECOA for which Plaintiff is entitled to actual damages and punitive damages as provided in 15 U.S.C. §§ 1691e(a) and 1691e(b) and for which Plaintiff also seeks injunctive relief.  In each of its financing transactions Car Center rejects the buyer's credit application because Car Center refuses to honor the credit ostensibly promised in the RISC, and the Plaintiff applied only with Car Center to extend him credit.  Car Center never provides any rejected finance buyer, including Plaintiff, and adverse action notice as required by the ECOA.  As a creditor, as defined in TILA and the ECOA, by law, though it may deny it, Car Center regularly extends credit by way of a RISC (then immediately and unilaterally revokes it by claiming that it is not a creditor, claiming instead that some third party will be the creditor, which is legally impermissible under TILA), and makes credit decisions including setting the terms of the credit, and by invariably revoking the credit terms disclosed in all of its consumer RISCs, and by itself rejecting consumer

credit applications *ab initio*.  That is, Car Center refuses to honor its RISCs, thus denying credit to Plaintiff.

6.      Count III alleges that Car Center violated Maryland's Equal Credit Opportunity Act ("MECOA"), MD. CODE ANN., COMM. LAW § 12-701 *et seq.*, by violating the federal ECOA.  Plaintiff seeks actual damages and declaratory and injunctive relief.

7.      Count IV seeks actual damages as provided by Maryland's Consumer Protection Act, MD. CODE ANN., COMM. LAW § 13-101 *et seq*.  Plaintiff seeks a declaration that Car Center's acts and practices are violations of TILA, the ECOA, MECOA and the CPA – as they are deceptive, unfair and/or unconscionable and are continuing.  The actual damages resulting from Car Center's violations of TILA and the CPA include the expenses related to the purchase of insurance for that period of time when Car Center considered the purchased vehicle its property and not the Plaintiff's property.  Other actual damages include the loss of use of the purchased vehicle, loss of items in the purchased vehicle, loss of employment, and expenses incurred as a proximate result of Defendant's repossession.

8.      TILA provides in pertinent part as follows:

      a.   It is the purpose of [TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit.  15 U.S.C. § 1601(a). ("Disclosures" that are unilaterally and arbitrarily changeable are meaningless.)

      b.   Car Center is the only creditor in Plaintiff's credit sales.  15 U.S.C. §§ 1602(f) and (g); 12 C.F.R. §§ 226.2(16) and (17); 15 U.S.C § 1638(a); 12 C.F.R §§ 226.17a and 226.18.

c.  The Act applies to every written consumer credit contract in the United States between a buyer and seller, providing for the extension of credit not exceeding $25,000, payable in more than four installments, for personal, family, or household purposes.  15 U.S.C. §§ 1602(f) and (h), 1603(3), and 1640(a).

d.  The Plaintiff's retail installment contract was legally consummated at the time he signed the RISC presented to him by Car Center, and Car Center delivered to him the purchased motor vehicle. 15 U.S.C. § 1638(b)(1); 12 C.F.R § 226.2(13); 12 C.F.R. § 226.17(b).  "Consummation" means the transaction is completed.

e.  "Consumer credit" means credit offered or extended to a consumer primarily for personal, family or household purposes.  12 C.F.R. § 226.2(a)(12).

f.  A purchase contract (buyer's order) is not a financing contract under the Act, and "consummation" under TILA occurs only when a consumer becomes contractually obligated on a financing contract.  12 C.F.R. § 226.2(a)(13); Official Staff Commentary at § 226.2(a)(13).  A RISC is a financing contract.

g.  "Assignees" are not creditors.  Official Staff Commentary at 12 C.F.R § 226.2(17); 15 U.S.C. § 1641.

h.  TILA trumps any state statute and any state appellate opinions that are inconsistent with its provisions.  15 U.S.C § 1610(a).

      i.   Car Center is licensed as a motor vehicle retailer and is a credit grantor pursuant to MD. CODE ANN., COMM. LAW § 12-1001(g).

9.      Maryland Law provides in pertinent part:

      a.   Car Center is licensed as a motor vehicle retail installment seller and is a credit grantor.  *See* MD. CODE ANN., TRANSP. § 15-101(c) and MD. CODE ANN., COMM. LAW § 12-1001(g).

      b.   A RISC shall be in writing, shall be signed by both the buyer and the seller, and shall be completed as to all essential provisions prior to the signing of the contract by the buyer.  *See* MD. CODE ANN., TRANSP. § 15-311 and COMAR 11.12.01(A) and (B).

      c.   Before the transaction is consummated (the moment of buyer signing), a copy of the RISC wherein the required disclosures are made shall be delivered to the buyer.  *See* MD. CODE ANN., COMM. LAW § 12-1013.2 (a contract purportedly conditioned upon third party approval is not consummated, according to defendant, until assignment is completed).

      d.   Car Center must plead and prove that it complied with TILA in Plaintiff's finance transaction (an impossibility).  MD. CODE ANN., COMM. LAW § 12-1014(B).

10.     At all times relevant hereto Plaintiff was a consumer as defined in 15 U.S.C. § 1602(h), 12 C.F.R. § 226.2(11), and MD. CODE ANN., COMM. LAW § 13-101(c).

11.     The Plaintiff alleges that his financing contract was not completed as to all essential provisions because at the time Plaintiff signed a RISC, Car Center considered the Truth in Lending terms to be non-final and were subject to change at Car Center's whim.  Car Center

in practice either unilaterally changes the terms and then obtains the consumer's signature on a second, un-bargained-for contract, or Car Center considers itself not bound by the RISC terms, revokes the contract, and seizes or otherwise reacquires the purchased vehicles from the buyers, often days or weeks after RISC signing.  Hence, the "essential terms " are not completed at the time of consummation, are fictitious and illusory, and are "completed," if ever, long after contract signing, depending upon whether Car Center chooses to assign the buyer-signed RISC to a third party; or chooses to revoke the RISC and unilaterally change the terms to its advantage.

12.     In Plaintiff's transaction, the RISC states in clear terms that the contract is binding and financing is in place (as per Plaintiff's RISC attached hereto as Exhibit B), yet Car Center blatantly violates those contract terms.

Car Center extends credit.

Seller-Creditor (Name and Address)
Car Center LLC
2320 Crain- Hwy
Waldorf, Maryland 20601

You, the Buyer (and Co-Buyer, if any) may buy the vehicle below for cash or on credit.  By signing this contract, you choose to buy the vehicle on credit under the agreements on the front and back of this contract.  You agree to pay the Seller-Creditor (sometimes "we" or "us" in this contract) the Amount Financed and Finance Charge in U.S. funds according to the payment schedule below.  We will figure your finance charge on a daily basis.  The Truth-in- Lending Disclosures below are part of this contract.

NO COOLING OFF PERIOD

State law does not provide for a "cooling off" or cancellation period for this sale.  After you sign this contract, you may only cancel it if the seller agrees or for legal cause.  You cannot cancel this contract simply because you change your mind.  This notice does not apply to home solicitation sales.  (Buyer Signs:  Ozell Carter)

HOW THIS CONTRACT CAN BE CHANGED:  This contract, along with all other documents signed by you in connection with the purchase of this vehicle[1],

---

[1] This language violates the single document rule set forth in COMAR 11.12.01.14 (A) and (B).

comprise the entire agreement between you and us affecting this purchase. No oral agreements or understandings are binding.

NOTICE TO THE BUYER: Do not sign this contract in blank. You are entitled to a copy of the contract at the time you sign. Keep it to protect your legal rights. You agree to the terms of this contract. You confirm that before you signed this contract, we gave it to you, and you were free to take it and review it. You confirm that you received a completely filled-in copy when you signed it.

*(On the reverse side of the RISC)*

YOUR OTHER PROMISES TO US:

Security Interest.

You give us a security interest in:
- The vehicle and all parts or good installed in it;
- All money or goods received (proceeds) for the vehicle;
- All insurance, maintenance, service, or other contracts we finance for you; and
- All proceeds from insurance, maintenance, service, or other contracts we finance for you. This includes any refunds of premiums or charges from the contracts.

This secures payment of all you owe on this contract. It also secures your other agreements in this contract. You will make sure the title shows our security interest (lien) in the vehicle.

13.     The extension of credit in unambiguous terms, coupled with the withdraw of that credit approximately two months later, fundamentally violates TILA, common law contract principles (i.e., mutuality of obligation, consideration), violates equitable principles, and violates the Maryland Law, including the Consumer Protection Act.

**CARTER TRANSACTION**

14.     Ozell Carter went to Car Center in October 2010 in order to assist his son in the purchase of a vehicle.

15.     Mr. Carter's intention was to assist his son in establishing credit as to act as a co-signer on his son's car loan if necessary.

16.     While there, Car Center offered Mr. Carter a "deal" to purchase a second vehicle for himself.

17.     Mr. Carter decided to buy a 2004 Mercury Sable, vehicle identification number ("VIN") 1MEFM55S64G610678.

18.     Car Center originally contracted with Mr. Carter on October 22, 2010 to purchase the vehicle for $10,174.95 at an interest rate of 16.90% with 54 payments of $278.30 each (Exhibit A).

19.     Mr. Carter provided insurance for the vehicle on October 26, 2010.

20.     Mr. Carter and Car Center signed a Maryland Temporary Registration Certificate on October 26, 2010 and temporary tags were placed on the car.

21.     Mr. Carter drove the vehicle from the lot on October 26, 2010.

22.     Shortly after the purchase, Mr. Carter received a call from Bert Bowen, employee and/or agent of Car Center, explaining that Car Center had a better deal which would lower the monthly payments.  Based on this, Mr. Carter returned to Car Center.

23.     On November 4, 2010, the parties entered into a new agreement where the price of the vehicle was lowered to $8,512, the interest rate increased to 20.25%, the payment term increased from 54 to 60 months and the monthly payments reduced to $234.71 (*see* Exhibit B).

24.     On that RISC Car Center is listed as the "Creditor-Seller" and no Assignee is listed (*see* Exhibit B).

25.     The first payment was due on December 19, 2010 (*see* Exhibit B).

26.     Both parties signed this agreement and Mr. Carter was provided a copy.

27.     Mr. Carter, believing he had purchased and financed a new vehicle, sold his other vehicle and transferred title to it.

28.    The first payment under the contract (Exhibit B) was due on December 19, 2010.

29.    On or about December 12, 2010, Mr. Carter began to get concerned that he had not yet gotten his payment book, and, a few days later, he called Car Center to discuss this.  He spoke again to Mr. Bowen who told him that he should get his book soon and not to worry about the payment.

30.    When Mr. Carter had not received his book the following week (December 20, 2010) he called again, and this time Mr. Bowen told him to come into the office on Thursday, December 23 and make a payment.

31.    On Thursday, December 23, 2010, Mr. Carter returned to Car Center with his checkbook in order to make his first payment of $234.71.  He was led to the finance office by Car Center's finance manager and was told that financing had not gone through and he needed to sign a new RISC, now with a co-signer and payments of $375.00 per month for three years.  Mr. Carter said he thought he already had a deal but Car Center told him he did not and could not keep the car unless he signed the new RISC under these new terms.

32.    Mr. Carter could not get a co-signer (although his son did come to Car Center to try to assist as co-signer, but was rejected); neither could he increase his monthly payments by almost $150 more than the amount for which he contracted.

33.    When he explained this to Car Center agents they promised him they would continue to work to get acceptable financing.

34.    The temporary tags expired on the subject vehicle on Christmas Day, December 25, 2010, rendering it legally un-drivable.

35.    Mr. Carter returned the car to Car Center's lot that day, still believing Car Center's promises that it would work with him to get financing.

36.     Based on Car Center's assurances that he would get financing on that vehicle, he left his belongings in the car. Those belongings have never been returned to him.

37.     Over the next few weeks, Mr. Carter had numerous conversations with Car Center.  At one point, Car Center attempted to sell him a different car with over 150,000 miles, which had part of the dashboard fall off when he test drove it.

38.     Finally, realizing that Car Center would not honor its agreement and that he would not be able to purchase a vehicle from them, he hired counsel.

39.     During this time (from approximately December 22, 1010 and into January 2011), Mr. Carter began getting letters from financial institutions denying him credit for the auto loan.

40.     Mr. Carter never received a letter from Car Center denying him credit.

41.     As a result of Car Center' s failure to honor the RISC, Plaintiff has suffered damages, including damage to his credit, loss of goods, time missed from work, expenses for a rental car, insurance paid, and other economic and non-economic damages.

## COUNT I – Truth in Lending Act

42.     This is an action for actual and statutory damages plus costs and attorneys' fees, brought pursuant to 15 U.S.C. § 1601 (a), *et seq.*, 15 U.S.C. § 1638, Regulation Z, 12 C.F.R § 226.1, *et seq.*, 15 U.S.C. § 1640(a), and MD. CODE ANN., COMM. LAW § 12-1014(b).

43.     Plaintiff incorporates all prior paragraphs here.

44.     At all times material hereto, Plaintiff was a consumer, Car Center was a creditor, the credit extended was consumer credit, and the transaction was a credit sale, each as defined in 15 U.S.C. § 1602 and 12 C.F.R. § 226.2.

45.     For the past several years, Car Center has invariably violated TILA and Regulation Z in each of its credit sales by using illusory TILA disclosures in its RISCs, including

the APR, the Finance Charge, the Amount Financed, the Total of Payments, the Total Sale Price and every other term as in Plaintiff's RISC because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent charge or cancellation at Car Center's sole and arbitrary whim as in Plaintiff's transaction.

46.     Car Center's acts and omissions are violations of TILA as TILA's purpose is to assure meaningful disclosures of credit terms so that consumers will be able to compare more readily the various credit terms available to them and avoid the uninformed use of credit.  This because it is impossible to compare terms that are cancellable or changeable (thus illusory) at Car Center's whim with credit terms proposed by competitors, as is contemplated by TILA.  15 U.S.C. § 1601(a).

47.     TILA requires that consummation (contract completion) occur at the time that the buyers sign a RISC.  12 C.F.R. § 226.2(13).  In practice, Car Center attempts to condition the Plaintiff's RISC on separate financing.

48.     As a result of Car Center's violation of TILA, Plaintiff is entitled to actual damages plus statutory damages in an amount not exceeding $1,000, plus costs and attorneys' fees.  15 U.S.C. § 1640(a)(2)(B).

49.     Plaintiff has retained the services of the undersigned attorney who is entitled to reasonable fees upon prevailing.  15 U.S.C § 1640(a)(3).

WHEREFORE Plaintiff demands judgment for actual and statutory damages of $250,000 plus costs and attorney fees against Defendants.

## COUNT II – Equal Credit Opportunity Act (ECOA)

50.     This is an action for actual damages, declaratory and injunctive relief, and for punitive damages to redress the violation by Car Center of the Equal Credit Opportunity Act, 15

U.S.C. § 1691, *et seq.*, and Regulation B, 12 C.F.R. § 201, *et seq.* ("ECOA").  Plaintiff seeks

relief from the acts of Car Center who has failed to provide to Plaintiff any written notification of

the reasons for Car Center's adverse credit action in response to the credit applications submitted

to Car Center and the credit contract signed by Plaintiff.

51.     Plaintiff adopts and re-alleges all prior paragraphs.

52.     The Court has jurisdiction of this case pursuant to 15 U.S.C. § 1691e(f).  The

court is authorized to grant declaratory and injunctive relief under 15 U.S.C. § 1691e(c).

53.     On or about October 22, 2010, Plaintiff submitted a credit application to Car

Center in connection with the purchase and financing of the described 2004 Mercury Sable.

54.     After Plaintiff had purchased and financed the Sable by way of the attached RISC

(Exhibit B) Car Center advised Plaintiff that it had revoked his credit, which is an adverse action

under the ECOA.  Car Center regularly purports to extend credit as evidenced by the RISCs and

when credit is denied or revoked it is Car Center who makes that decision.

55.     At no time did Car Center provide Plaintiff with any written document in

connection with the denial or revocation of  credit or with the written notification required by 15

U.S.C. § 1691(f) and 12 C.F.R. § 202.9(a)(2).

56.     As a result of Car Center's violation of the ECOA and Regulation B, Plaintiff has

suffered actual damages for his embarrassment, humiliation, mental distress, and inconvenience,

and Car Center is liable, therefore, pursuant to 1 U.S.C. § 1691e(a).

57.     The acts and omissions complained of herein were done by Car Center

intentionally, purposefully and in reckless disregard of the rights of Plaintiff, and Car Center is

liable to Plaintiff for statutory punitive damages of up to $10,000 pursuant to 15 U.S.C. §

1691e(b).

58.     Unless Car Center is ordered to henceforth provide financing consumers with the written notification required by law, future consumers will continue to suffer irreparable injury where there is no adequate remedy at law.

59.     The acts and omissions complained of herein were done by Car Center as part of a pattern and practice of failing to provide the required written notice to credit applicants regarding whom adverse action has been taken.

60.     Car Center maintains no procedures designed to insure that the written adverse action notice will be provided to consumers.

61.     Plaintiff has retained the services of the undersigned attorneys who are entitled to reasonable fees upon prevailing.  15 U.S.C. § 1691e(d).

WHEREFORE Plaintiff demands as follows:

a.  The Court declare the acts and omissions of Car Center to be violations of the ECOA and Regulation B;

b.  The Court award Plaintiff actual damages in the amount of $75,000;

c.  The Court award Plaintiff statutory punitive damages;

d.  The Court issue an injunction ordering Car Center to provide to Plaintiff written notification required by law, and ordering Car Center to establish and maintain appropriate procedures adequate to insure compliance with the ECOA and Regulation B;

e.  The Court award to Plaintiff reasonable attorneys' fees and costs, and to grant such other and further relief as may be appropriate.

## COUNT III – Violation of Maryland's Equal Credit Opportunity Act-MECOA

62.     This is an action for actual and statutory damages plus costs and attorneys' fees brought pursuant to MD. CODE ANN., COMM. LAW § 12-701, *et seq.*

63.     Plaintiff adopts and re-alleges all prior paragraphs.

64.     This statute states that a violation of the ECOA is also a violation of Maryland Law.  MD. CODE ANN., COMM. LAW § 12-704(3).

65.     For the reasons set forth in previous paragraphs, specifically those in Count II, Car Center violated both Federal and State ECOA.

WHEREFORE Plaintiff demands as follows:

   a.   The Court declare the acts and omissions of Car Center to be violations of the MECOA;

   b.   The Court award Plaintiff actual damages in the amount of $75,000;

   c.   The Court award Plaintiff statutory punitive damages;

   d.   The Court issue an injunction ordering Car Center to provide to Plaintiff written notification required by law, and ordering Car Center to establish and maintain appropriate procedures adequate to insure compliance with the MECOA;

   e.   The Court award to Plaintiff reasonable attorneys' fees and costs, and to grant such other and further relief as may be appropriate.

## COUNT IV – Unfair and Deceptive Trade Practices

66.     This is an action for actual and statutory damages plus costs and attorneys' fees brought pursuant to MD. CODE ANN., COMM. LAW § 12-701, *et seq.*

67.     Plaintiff adopts and re-alleges all prior paragraphs.

68.     This statute is applicable to this transaction, in accordance with MD. CODE ANN., COMM. LAW § 13-301 *et seq.*, as Plaintiff is a consumer, this transaction involved consumer goods, and Defendant Car Center is a merchant within that provision's definitions.

69.     Defendant has violated Maryland's Consumer Protection Act as follows:

a.  Defendant acted unfairly and deceptively by making false, falsely disparaging, or misleading oral or written statements or other representations which had the capacity, tendency, or effect of deceiving or misleading Plaintiff when Car Center and Plaintiff entered into a contract, placed tags on the subject vehicle, had Plaintiff purchase insurance, let Plaintiff drive off of the lot, and for all intents and purposes represented that the vehicle was his and financing was in place, then luring him back to the dealership under false pretenses (making a payment) and demanding return of the vehicle claiming there was no financing.  MD. CODE ANN., COMM. LAW § 13-301(1);

b.  Defendant made representations that a consumer good had a characteristic which it did not when they provided documentation and representations, as set forth above, that the vehicle was financed and that Plaintiff had ownership of it.  MD. CODE ANN., COMM. LAW §13-301(2)(i);

c.  Defendant made representations that it (a merchant) had a sponsorship, approval, status, affiliation, or connection which it did not have, when Car Center represented it was the creditor for the transaction on the RISC and apparently it had no intention of extending credit.  MD. CODE ANN., COMM. LAW § 13-301(2)(ii);

d. Defendant deceived Plaintiff by failing to state material facts when it failed to tell Plaintiff in the RISC that he may have to return the vehicle despite that he had a contract, insurance for, and physical possession of the vehicle. MD. CODE ANN., COMM. LAW § 13-301(3);

e. Defendant acted with deception, fraud, false pretense, false premise, misrepresentation or knowing concealment , suppression or omission of a material fact with the intent that a consumer relay on the same in connection with regard to the sale of any consumer goods and the subsequent performance of a merchant with respect to an agreement of sale, lease or rental when Car Center provided Plaintiff with a RISC setting forth the terms of the sale and financing, but had no intention of honoring that agreement as creditor and retained the right to cancel the transaction if it did not get the RISC assigned on terms it approved, when it lured Plaintiff back into the dealership under false pretenses, and when it failed to inform Plaintiff that it was rejecting his credit application. MD. CODE ANN., COMM. LAW §§ 13-301(9)(i) and (iii);

f. Defendant offered consumer goods without intent to sell them as offered when it provided a RISC without intention to actually act as the creditor or to actually offer the credit on the terms specifically stated. MD. CODE ANN., COMM. LAW § 13-301(5)(i);

g. Defendant may have violated this statue in other ways to be determined.

70. As a direct result Plaintiff suffered damages, including economic damages and non economic damages including but not limited to stress, embarrassment and humiliation.

WHERFORE, Plaintiff demands judgment against Defendant, in the amount of $250,000 plus court costs and attorney fees.

## COUNT V – Fraud

71.     Plaintiff adopts and re-alleges all prior paragraphs.

72.     Defendant asserted false representations of material facts as set forth above, including but not limited to, that the Plaintiff had a binding contract, that Plaintiff had financing and that the financing was on specific terms, that Plaintiff had purchased the vehicle, and that Defendant was the creditor.

73.     Defendant knew that the representations were false or the representations were made with such reckless disregard for the truth that knowledge of the falsity of the statement can be imputed to it.  This is because it had no intention of being the creditor, knew the financing was conditional, knew it intended to take the car back if it did not get third party financing on terms acceptable to it, and may have had other knowledge and made other representations yet to be determined.

74.     Defendant made these false representations for the purpose of defrauding the Plaintiff, to entice him to buy the car. Had Defendant told Plaintiff the truth Plaintiff would not have signed the contract and would have purchased a vehicle at a dealership where the actual creditor was listed on the RISC and where the contract terms were accurate.

75.     The Plaintiff justifiably relied upon the misrepresentations, reasonably believing he had a deal and had purchased a car and that the terms of that deal were clear.

76.     The Plaintiff suffered damages as a direct result of the reliance upon the misrepresentations, in that he had to return the car, lost the items in the car, paid for insurance, had to get alternate transportation, lost employment and suffered other damages.

77.     Plaintiff believes this is the pattern and practice of Defendant in order to lock consumers unknowingly into deals where it retains the unilateral power to revoke the deal at its whim.

WHEEREFORE, Plaintiff respectfully requests $250,000 against Defendant in compensatory damages and $500,000 in punitive damages, as well as interest, costs and attorney's fees to be determined by the court.

  /s/ Jane Santoni
Jane Santoni
Williams & Santoni, LLP
401 Washington Avenue, Suite 200
Towson, Maryland 21204
(410) 938-8666
(410) 938-8668 (fax)